**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RHEA G. HERNS, individually and on behalf of all others similarly situated,** | : | **CASE NO._______________** |
| **Plaintiffs,** | : | **JUDGE: ____________________** |
| **v.** | : | |
| | : | **JURY DEMANDED** |
| **TRIVIUM ALUMINUM PACKAGING USA CORPORATION,** | : | |
| ***Defendant.*** | : | |

## COMPLAINT

## I. INTRODUCTION

1. This is an action brought by Rhea G. Herns (hereinafter "Named Plaintiff") on behalf of herself and all others similarly situated against Trivium Aluminum Packaging USA Corporation (hereinafter "Defendant").

2. Named Plaintiff brings her federal claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Fair Labor Standard Act of 1939 ("FLSA"), as amended 29 U.S.C. § 201 et seq. Named Plaintiff seeks Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to inform other similarly situated employees of their rights under the FLSA.

3. Named Plaintiff brings her Ohio claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 et. seq., (the "Ohio Wage

Act"), the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15, (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts") and O.R.C. § 2307.60. Named Plaintiff brings her Ohio Acts and O.R.C. § 2307.60 on behalf of herself and all similarly situated employees from Ohio who file their written consent to join this action pursuant to Ohio Rev. Code Ann. § 4111.14(k). Named Plaintiff seeks Court Supervised Notice pursuant to Ohio Rev. Code Ann. § 4111.14(k).

4. Named Plaintiff and those similarly situated (hereafter, "Putative Plaintiffs") are current and former employees of Defendant who did not receive one and a half times their regular rate for all hours worked over forty (40) in a workweek.

5. Under the FLSA and the Ohio Wage Act, Defendant was required to pay for all hours Putative Plaintiffs worked and pay them 150% of their regular rate for all hours worked over 40 in a workweek. By willfully failing to compensate Named Plaintiff and Putative Plaintiffs who performed pre-shift and post-shift work, Defendant violated the FLSA and the Ohio Acts.

## II. <u>JURISDICTION AND VENUE</u>

7. The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

8. This Court has supplemental jurisdiction over Named Plaintiff's and the Putative Class Members' Ohio Acts claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiff's claims under the FLSA that they form part of the same controversy.

9. Venue in the Northern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

## III. THE PARTIES

10. Rhea G. Herns ("Named Plaintiff") is an adult resident of Campbell, Ohio residing at 171 Madison St. Campbell, Ohio 44405. Named Plaintiff was employed by Defendant as a lithographer beginning in approximately January 2024 until approximately June 2025. Her consent form is attached hereto as **Exhibit A** and is filed with this Complaint pursuant to 29 U.S.C. § 216(b).

11. The Putative Plaintiffs are all non-exempt employees employed by Defendant within three (3) years preceding the commencement of this action who were not paid overtime at a rate of 150% their respective regular rates for all hours worked over forty (40) in a workweek.

12. Defendant Trivium Aluminum Packaging USA Corporation ("Defendant" or 'Trivium") is a for-profit corporation registered to do business in the state of Ohio. While working for Defendant, Named Plaintiff worked at One Performance Place, Youngstown, OH 44502 (Mahoning County), where Defendant maintains its operations. Process may be served upon its Registered Agent: CT Corporation System at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

## IV. FACUTAL ALLEGATIONS

13. Trivium was created in approximately October 2019 when Exal Corporation changed its name and merged with the Ardagh Group.[1]

14. Named Plaintiff and the Putative Plaintiffs worked at One Performance Place, Youngstown, OH 44502, which is operated by Defendant but displays the Exal Corporation name on its signage.

---

[1] *Exal to Combine with Ardagh's Metal Packaging business to Form Trivium Packaging*, stonebridgepartners.com (Oct. 31, 2019), https://stonebridgepartners.com/exal-to-combine-with-ardaghs-metal-packaging-business-to-form-trivium-packaging/

15. During all times material to this Complaint, Defendant's handbook that is in force both companywide and to the Named Plaintiff and the Putative Plaintiffs in particular still bears the Exal Corporation title and references.

16. During all times material to this Complaint, Defendant was an employer within the meaning of the FLSA, the Ohio Acts, and O.R.C. § 2307.60.

17. During all times material to this Complaint, Defendant employed Named Plaintiff and the Putative Plaintiffs within the meaning of the FLSA and the Ohio Acts.

18. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

19. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs have been Defendant's employees pursuant to the Ohio Acts and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

20. During all times material to this Complaint, Defendant hired Named Plaintiff and the Putative Plaintiffs.

21. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs were paid at an hourly rate, not on a salary or fee basis as described in 29 C.F.R. § 541.301 and thus were non-exempt employees entitled to be paid at least the minimum wage

for all hours worked and overtime at 150% of their regular rate for all hours worked over forty (40) in a workweek.

22. Per Defendant's website, Defendant offers a wide range of metal packaging allowing them to develop standard or custom packaging based on client product or brand requirements.[2] Defendant also offers graphics and printing for its metal packaging.[3]

23. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs regularly worked beyond forty (40) hours in a workweek.

24. During all times material to this Complaint, Defendant would record Named Plaintiff and the Putative Plaintiffs' hours worked using the software system ADP, wherein Named Plaintiff and the Putative Plaintiffs would have to manually clock themselves in to work and clock themselves out at the end of their respective shifts.

25. During all times relevant to this Complaint, Named Plaintiff and the Putative Plaintiffs were employed on one of two shifts: the evening shift from 7:00 p.m. to 7:00 a.m., or the day shift from 7:00 a.m. to 7:00 p.m. The shifts operated consecutively to maintain continuous, 24-hour production.

26. For example, during all times material to this Complaint, Named Plaintiff was typically scheduled to work the evening shift on a rotating schedule, whereby one week she would work Wednesday and Thursday from 7 p.m. to 7 a.m. and the following week she worked Monday, Tuesday, Friday, Saturday, and Sunday from 7 p.m. to 7 a.m. This schedule alternated on a regular basis.

---

[2] *About Us,* triviumpackaging.com, https://www.triviumpackaging.com/about-us?_gl=1*3v6g58*_up*MQ..*_gs*MQ..&gclid=Cj0KCQjwyvfDBhDYARIsAItzbZEAFPTo0BvPvZ4TR9inV-TEKMvqt86eRF-zNPFhwcx1iTkDJeKbSZMaAkrUEALw_wcB&gbraid=0AAAAo1oiM2m9_gxnHlzkZWFrdu6YU8kT. (Last visited July 21, 2025.)

[3] *Id.*

27. However, during all times material to this Complaint, both the Defendant's work demands and Named Plaintiff's and the Putative Plaintiffs' primary job duties often required them to work before their shift was scheduled to begin or after it had ended. During all times material to this Complaint, the job duties of Named Plaintiff and the Putative Plaintiffs included printing cans according to customer-approved images and verifying that the cans produced on the line matched the print designs.

28. During all times material to this Complaint, the oncoming shift was required to communicate with the outgoing shift regarding critical details necessary to perform their duties. These discussions included: updates regarding the printing process and imaging issues; the performance of ink units (such as whether colors were becoming too dark or too light); concerns with base coat appearance or color consistency; problems with cans dropping; over-varnishing of colors; and any other issues affecting production that the incoming shift needed to be aware of to ensure a smooth transition and successful operation. (hereinafter "Hand-off Process")

29. During all times material to this Complaint, Defendant expected Named Plaintiff and Putative Plaintiffs to be on the line and ready to assume production rules at the start of the oncoming Named Plaintiff and Putative Plaintiffs' scheduled start time.

30. During all times material to this Complaint, in order to complete the Hand-off Process and to comply with Defendant's policies, Named Plaintiff and the Putative Plaintiffs often, if not always, clocked-in (and continue to clock-in) fifteen (15) to thirty (30) minutes prior to start of their scheduled shift.

31. During all times material to this Complaint, Named Plaintiff and Putative Plaintiffs who worked the outgoing shift were required to remain on the line beyond their scheduled hours whenever issues arose that needed to be addressed. These issues included:

troubleshooting, completing the Hand-off Process; cleaning the line; retrieving additional materials to stock the line for the incoming shift; and resolving problems with basecoats, printers, or over varnish units that could not be addressed during their shifts due to insufficient time and the inability to leave the line. ("Clock-out Duties")

32. During all times material to this Complaint, in order to complete their required Clock-out Duties, Named Plaintiffs and the Putative Plaintiffs often, if not always, clocked-out (and continue to clock-out) fifteen (15) to thirty (30) minutes after the end of their scheduled shift.

33. During all times material to this Complaint, and upon information and belief, if Named Plaintiff or the Putative Plaintiffs clocked-in before the start of their scheduled shift, or clocked-out after their scheduled end time, Defendant would modify their time records to reflect only twelve (12) hours worked, regardless of the actual time worked.

34. During all times material to this Complaint, Defendant had (and continues to have) a company policy that states "no one is permitted to clock in earlier than fifteen (15) minutes before their scheduled shift begins. If no approval is submitted to HR or Payroll for an early punch, then the employee will be paid based on scheduled time (7a – 7p or 7p – 7a)." *See Defendant's Time Clock Procedure Policy* attached as **Exhibit B.**

35. However, during all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs were required to clock-in before the start of their scheduled shifts in order to complete their Hand-off Duties.

36. Named Plaintiffs and the Putative Plaintiffs were required to complete their Hand-off Duties prior to the start of their scheduled shift because Defendant maintained a company policy and practice of issuing an attendance point for clocking in even one (1) minute

late—points that accumulated toward disciplinary action and eventually termination. *See Defendant's Attendance and Disciplinary Action Policy* attached as **Exhibit C.**

37. Indeed, during all times material to this Complaint, Defendant maintained a policy and practice whereby if Named Plaintiff and the Putative Plaintiffs clocked-in before their scheduled shift start time, their time was shaved; if they clocked-in after their scheduled start time, they were subject to disciplinary action. Nevertheless, they were required to be clocked-in and fully prepared to begin work precisely at 7:00 a.m. or 7:00 p.m., depending on their schedule.

38. For example, Named Plaintiff submitted a timecard showing that she clocked-in at 6:36 p.m. and clocked-out at 7:00 a.m., reflecting a total of twelve (12) hours and twenty-four (24) minutes (or 12.4 hours) worked. However, Defendant unlawfully reduced her time to reflect that Named Plaintiff worked only twelve (12) hours during that shift. *See Named Plaintiff Hern's Time Clock 12 Hour Time Record* attached as **Exhibit D.**

39. During all times material to this Complaint, and upon information and belief, if Named Plaintiff and the Putative Plaintiff worked more than thirty (30) minutes prior to or after their scheduled shift, their time clock would be adjusted to reflect only 12.50 hours. However, Named Plaintiff and the Putative Plaintiffs actually worked more than 12.50 hours on many occasions.

40. For example, Named Plaintiff submitted a timecard showing that she clocked-in at 6:49 p.m. and clocked out at 7:29 a.m., reflecting a total of twelve (12) hours and forty (40) minutes (or 12.67 hours) worked. On another occasion, Named Plaintiff's timecard shows her clocked-in at 6:43 p.m. and clocked-out at 7:28 a.m., reflecting a total of twelve (12) hours and forty-five (45) minutes (or 12.75) hours. However, Defendant unlawfully reduced her time to

reflect only twelve and a half (12.5) hours for both shifts. *See Named Plaintiff Hern's Time Clock 12.50 Hour Time Record* attached as **Exhibit E.**

41. During all times material to this Complaint and upon information and belief, Defendant was aware that Named Plaintiff and the Putative Plaintiffs often worked fifteen (15) to thirty (30) minutes before and after their scheduled shifts and permitted this to occur.

42. Defendant's handbook provides that employees will be paid only for their scheduled shifts unless they obtain prior approval from Human Resources or Payroll to clock in more than fifteen minutes early. This policy deliberately excludes from compensation the hours employees actually worked outside their scheduled shifts, unless pre-authorized, even though Defendant knew that employees routinely performed such work.

43. Indeed, any attempt to seek payment through an approval process was futile, as managers themselves required off-the-clock work and discouraged employees from submitting approval. Employees who attempted to challenge time shaving were told the practice was 'policy' and their requests were denied or ignored.

44. Upon information and belief, Defendant altered Named Plaintiff's and the Putative Plaintiffs' time records as part of a scheme to avoid paying overtime.

45. During all times material to this Complaint, when the pre-shift and post-shift work time is added back into Named Plaintiff's and the Putative Plaintiffs' hours worked, they are uncompensated for overtime hours worked in violation of the FSLA and Ohio Wage Acts.

46. During all times material to this Complaint, Defendant knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Named Plaintiff and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a workweek at an amount equal to 150% of their regular rate.

47. During all times material to this Complaint, Defendant's pay practice of not paying Named Plaintiff and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a workweek at an amount equal to 150% of their regular rate, was willful and not in good faith.

## V. COURT SUPERVISED NOTICE PURSUANT TO 29 USC § 216(b)ALLEGING FLSA VIOLATIONS

48. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

49. Named Plaintiff requests that the Court issue Court Supervised Notice to the following group of current and former employees defined as:

> **All current and former hourly employees who have been employed by Trivium Aluminum Packaging USA Corporation who, within the three (3) years preceding the commencement of this action through the present, worked more than forty (40) hours in a workweek. ("Employees Entitled to Notice")**

50. Named Plaintiff reserves the right to amend and refine the definition of the Employees Entitled to Notice she seeks to have the Court serve notice based upon further investigation and discovery.

51. The precise size and identity of the proposed Employees Entitled to Notice should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

52. Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because there exists at least a strong likelihood that they are similarly situated to the Named Plaintiff.

53. Sending Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because they have been subjected to single

companywide policies and common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including *inter alia*, whether Defendant satisfied the FLSA's requirements for paying them for all hours worked.

54. Named Plaintiff and the Employees Entitled to Notice, having willfully been not paid their entitled compensation for work they performed pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

55. The Named Plaintiff and the Employees Entitled to Notice have been similarly affected by the violations of Defendant in workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned FLSA compliant wages.

56. Named Plaintiff seeks to have the Court send supervised notice pursuant to 29 U.S.C. § 216(b), as defined above, to the proposed group of similarly situated current and former employees, i.e., Employees Entitled to Notice.

57. Named Plaintiff is similarly situated to the Employees Entitled to Notice and will prosecute this action vigorously on their behalf.

58. Named Plaintiff intends to send notice to all the Employees Entitled to Notice pursuant to Section 216(b) of the FLSA. The names and addresses of the Employees Entitled to Notice are available from Defendant's records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA.

59. Named Plaintiff and the Employees Entitled to Notice have been similarly damaged by Defendant's willful refusal to pay minimum wages for all hours worked, including failing to pay 150% of Named Plaintiff's and the Employees Entitled to Notice's regular rate for all hours worked beyond forty (40) in a workweek.

60. As a result of Defendant's FLSA violations, Named Plaintiff and the Employees Entitled to Notice are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

61. Any alleged defenses Defendant may raise will be common to the Named Plaintiff and the Employees Entitled to Notice.

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

62. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

63. During the time period beginning approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer of Named Plaintiff and Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(d).

64. During the time period from approximately three (3) years preceding the commencement of this action to the present, Named Plaintiff and the Employees Entitled to Notice were employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

65. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant employed Named Plaintiff and the Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(g).

66. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer subject to the FLSA.

67. During all times material to this Complaint, Named Plaintiff and the Employees Entitled to Notice have not been exempt from receiving overtime benefits under the FLSA because, *inter alia*, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.0, *et seq.*

68. At all times material to this Complaint, Defendant regularly employed Named Plaintiff and the Employees Entitled to Notice to work more than forty (40) hours in a workweek.

69. Defendant violated federal law because it knew or should have known that Named Plaintiff and the Putative Plaintiffs should have been paid overtime for all hours worked over forty (40) in a workweek, including work performed prior to or beyond their regularly scheduled hours.

70. Defendant, as described above, violated the FLSA, 29 U.S.C. § 207, by failing to pay Named Plaintiff and the Employees Entitled to Notice at the appropriate overtime rate for all hours worked in excess of forty (40) per workweek.

71. Named Plaintiff and the Employees Entitled to Notice should have been paid minimum wages for all hours worked and 150% of their regular rate for all hours worked beyond forty (40) in a workweek during the three years from the filing date of the Complaint or when they join this lawsuit.

72. Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continued to engage in conduct, which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

73. Named Plaintiff and the Employees Entitled to Notice are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of FLSA, by which the Named Plaintiff and the Employees Entitled to Notice have suffered and continue to suffer damages.

## COUNT II
## VIOLATION OF THE OHIO WAGE ACT

74. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

75. The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek. *See* O.R.C. §§ 4111, *et seq*.; *see also* 29 U.S.C. § 206(b).

76. The Ohio Wage Act provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) hours in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); 29 U.S.C. § 207(a)(1).

77. At all times material to this Complaint, Defendant was an employer covered by the Ohio Wage Act and is required to comply with its mandates.

78. At all times material to this Complaint, Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio were covered "employees" of Defendant pursuant to the Ohio Wage Act and thus entitled to the Ohio Wage Act's protections.

79. At all times material to this Complaint, Defendant regularly employed Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio to work more than forty (40) hours in a workweek.

80. At all times material to this Complaint, Defendant violated the Ohio Wage Act by repeatedly failing to compensate Named Plaintiff and Employees Entitled to Notice who join this lawsuit from Ohio for all hours worked, including Defendant's repeated action of refusing to compensate Named Plaintiff and Employees Entitled to Notice who join this lawsuit from Ohio for all hours worked over forty (40) hours in a workweek at a rate not less than one and one-half times their regular rate.

81. Defendant violated the Ohio Wage Act because it knew or should have known Named Plaintiff and the Putative Plaintiffs should have been paid overtime for all hours worked over forty (40) in a workweek, including work performed prior to or beyond their regularly scheduled hours.

82. Indeed, at all times material to this Complaint, Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio did not receive one and one-half times their regular rate for all hours they worked in excess of forty (40) in a workweek.

83. Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio are not exempt from the wage protections of Ohio Law. During relevant times, Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio were not exempt from receiving overtime because they were not "executive," "administrative," "professional," "outside sales," or "computer" employees, as those terms are defined under the FLSA. *See* O.R.C. § 4111.03(A); *see also* C.F.R. §§ 541 *et seq*.

84. In violating the Ohio Wage Act, Defendant's acts and omissions have been of a willful, intentional, and bad faith nature or otherwise in reckless disregard of the Ohio Wage Act.

85. Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio are entitled to unpaid overtime and other compensation, interest and attorneys' fees, and all

other remedies available as compensation for Defendant's violations of the Ohio Wage Act, by which the Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio have suffered and continue to suffer damages.

**COUNT III**
**OHIO PROMPT PAY ACT- FAILURE TO PROMPTLY PAY WAGES**

86. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

87. At all times relevant to this Complaint, Defendant was Named Plaintiff's and the Employees' Entitled to Notice who join this lawsuit from Ohio "employer" and was required to comply with the Ohio Prompt Pay Act's provisions. *See* R.C. § 4113.15.

88. The OPPA provides that employers shall pay covered employees all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month. *See* R.C. § 4113.15(A).

89. At all times material to this Complaint, Defendant has refused to pay Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio all owed overtime wages at one and one-half (1 ½) times their normal hourly rate and all wages at the statutorily mandate minimum wage rate, within thirty (30) days of performing the work. *See* R.C. § 4113.15(B).

90. Named Plaintiff's and the Employees' Entitled to Notice who join this lawsuit from Ohio wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

91. Defendant's violations of the OPPA have been of a willful, intentional, or bad faith nature or have otherwise exhibited a reckless disregard of the OPPA's provisions.

## COUNT IV
## VIOLATION OF O.R.C. § 2307.60 AND 29 U.S.C. § 216(a)

92. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

93. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

94. By its acts and omissions described herein, Defendant has willfully violated the FLSA, and Named Plaintiff and the Employees Entitled to Notice who join this lawsuit have been injured as a result.

95. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

96. As a result of Defendant's willful violations of the FLSA, Named Plaintiff and the Employees Entitled to Notice who join this lawsuit are entitled to compensatory and punitive damages pursuantto O.R.C. § 2307.60.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff, on behalf of herself and the Putative Plaintiffs, pray that this Court enter the following relief:

A. For an Order sending Court Supervised Notice to the FLSA Employees Entitled to Notice as defined herein and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

B. In the event the Defendant seeks to have discovery on the issues of whether the FLSA Employees Entitled to Notice are similarly situated to the Named Plaintiff, that the Court

issue an order tolling the FLSA statute of limitation for the FLSA Employees Entitled to Notice as of the filing of this Complaint;

C. Designating Named Plaintiff as representative for the FLSA Employees Entitled to Notice and designating counsel of record as Class Counsel;

D. Issuing proper notice to the FLSA Employees Entitled to Notice at Defendant's expense;

E. Unpaid wages, including overtime wages and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations for the Named Plaintiff and the FLSA Employees Entitled to Notice;

F. A declaratory judgment that the practice complained of herein is unlawful under the Ohio Wage Act and the OPPA;

G. Awarding Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio the sum of 6% of the total unpaid wages or $200.00 for each instance of failure to pay wages owed within thirty days, whichever is greater, pursuant to the OPPA;

H. Compensatory and punitive damages under O.R.C. § 2307.60;

I. Awarding pre-judgment and post-judgment interest;

J. Any other relief to which the Named Plaintiff and Employees Entitled to Notice may be entitled.

Dated: September 18, 2025

Respectfully submitted,

*<u>/s/ Anna R. Caplan</u>*
Anna R. Caplan (OH Bar No. 0104562)
Robert E. DeRose (OH Bar No. 0055214)
Nickole K. Iula (OH Bar. No. 0099895)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300

Email: acaplan@barkanmeizlish.com
bderose@barkanmeizlish.com
niula@barkanmeizlish.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff requests a trial by jury on all of their claims.

*/s/ Anna R. Caplan*
Anna R. Caplan